McGOWAN COMMERCIAL CO., Respondent, *v.* MIDLAND
COAL AND LUMBER CO., Appellant.

(No. 2,814.)

(Submitted April 6, 1910.   Decided April 25, 1910.)

[108 Pac. 655.]

*Statute of Frauds—Promise to Answer for Another's Debt—
Original or Collateral Promise—How Determined—Corpora-
tions—Officers—Authority—Jury Question.*

Statute of Frauds—Corporations—Officers—Authority—Jury Question.
   1.   Whether the president of a corporation, who, in requesting a mer-
   chant to furnish supplies to one who had contracted to cut timber for
   the company, had stated that he would see that the goods would be
   paid for, intended to bind himself or his principal, was a question for
   the jury's determination from all that was said and done and from all
   other surrounding facts and circumstances.
Same—Original or Collateral Promise—How Determined.
   2.   Where the question whether a promise was original or collateral
   depends solely upon the words used, the nature of the promise is a
   question of law for the court; where, however, the language of the
   promisor was used with reference to facts and circumstances tending to
   throw light upon the intention of the parties at the time, the question
   whether the promise was original or collateral to the promise of a third
   person becomes one of fact for a jury's determination.
Same.
   3.   In determining whether a promise was original or collateral to that
   of a third person, it is proper to inquire, among other things, whether
   the promisor had any immediate pecuniary interest in the transaction
   between the promisee and the person for whose benefit the promise was
   made.
Same.
   4.   While evidence that goods sold were charged to the person to whom
   they were delivered tends strongly to show that the seller gave credit
   and looked to him for payment, thus making the promise of another
   to answer for the debt a collateral one, it is not conclusive but open
   to explanation.
Same.
   5.   To make an oral promise to be answerable for the price of goods,
   delivered to another, original so as to take it out of the statute of
   frauds, credit must have been given exclusively to the promisor; but it
   is not necessary that the party for whose benefit it was made should
   be released from liability.   It is only where one agrees to pay the pre-
   existing debt of another that the latter principle is applicable.
Same.
   6.   The fact that plaintiff in a letter to defendant had styled the latter
   a "guarantor" of an account for goods sold and delivered to a third
   person, which it was sought to collect upon the theory that defendant
   company, through its president, had promised to pay it, was not a de-
   termining factor in solving the question whether the alleged promise
   was original or collateral.

Nonsuit—Evidence of Plaintiff—How to be Viewed.
7. Upon a motion for a nonsuit the evidence will be accepted as true, for appeal purposes, and viewed in the light most favorable to plaintiff.

*Appeal from District Court, Sanders County; Henry L. Myers, Judge.*

Action by the McGowan Commercial Company against the Midland Coal and Lumber Company. From an order granting a new trial after judgment of nonsuit, defendant appeals. Affirmed.

*Mr. E. M. Hall* submitted a brief in behalf of Appellant, and argued the cause orally.

Appellant contends that it is necessary for respondent to affirmatively show that E. B. Clark, the president and manager of the appellant corporation, had authority from said corporation to guarantee accounts of third parties, and that in the absence of such proof it has wholly failed to make a sufficient case to go to the jury. (10 Cyc. 929; Cook on, Corporations, 6th ed., sec. 774; *Helena National Bank* v. *Rocky Mountain Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829.)

Our second contention is that the evidence shows beyond question that the promise, if any, made by E. B. Clark, the president and general manager of the appellant company, was a special promise to answer for the debt, default or miscarriage of another, and, not being in writing, was invalid under section 5017 of the Revised Codes. The words used by him, namely: "You let Gibson have what he requires—what he needs—and I will see it is paid," constitute a collateral promise. (*Nelson* v. *Boynton,* 3 Met. (Mass.) 396, 37 Am. Dec. 148; *Mallory* v. *Gillett,* 21 N. Y. 412; *Wagner* v. *Hallack,* 3 Colo. 176.) See, also, the following cases in which the promise was made in substantially the same language as in the case at bar, and under facts very similar. In all these cases the promise was held to be collateral and invalid under the statute of frauds: *Wray* v. *Cox,* 86 Miss. 638, 38 South. 344; *Jenkins* v. *Lundgren,* 85 Ill. App. 494; *Halstead* v. *Pelletreau,* 101 App. Div. 125, 91

N. Y. Supp. 927; *Garrett-Williams Co.* v. *Hamil,* 131 N. C. 57, 42 S. E. 448; *Robertson* v. *Hunter,* 29 S. C. 9, 6 S. E. 850; *Walker* v. *McDonald,* 5 Minn. 368, 455; *Blake* v. *Parlin,* 22 Me. 395; *West* v. *Grainger,* 46 Fla. 257, 35 South. 91; *Indiana Trust Co.* v. *Finitzer,* 160 Ind. 647, 67 N. E. 520; *Skinner* v. *Conant,* 2 Vt. 453, 21 Am. Dec. 554; *Butters Salt etc. Co.* v. *Vogel,* 130 Mich. 33, 89 N. W. 560; *Birchell* v. *Neaster,* 36 Ohio St. 331; *Lewis* v. *Lewis Mfg. Co.,* 156 Pa. 217, 27 Atl. 20; *Newman* v. *Newman,* 7 Kan. App. 77, 52 Pac. 908. Furthermore, in order to take the promise out of the statute of frauds, the evidence must show that the credit was extended exclusively to the promisor, and that the third party was absolutely discharged from liability. (20 Cyc. 180, 182; *Jenkins* v. *Lundgren,* 85 Ill. App. 494; *Wray* v. *Cox,* 86 Miss. 638, 38 South. 344; *Robertson* v. *Hunter,* 29 S. C. 9, 6 S. E. 850; *Bloom* v. *McGrath,* 53 Miss. 249; *Harris* v. *Frank,* 81 Cal. 280, 22 Pac. 856; *Welsh* v. *Marvin,* 36 Mich. 59; *Miller* v. *Lynch,* 17 Or. 61, 19 Pac. 845.)

If any credit be given to him for whose benefit the promise is made, the promisor is not liable unless his promise is in writing, and this is so although the collateral undertaking may have been the principal inducement to the delivery of the goods, which would not have been delivered at all but for such promise. (*Walker* v. *Richards,* 39 N. H. 259; *Bloom* v. *McGrath,* 53 Miss. 249; *Norris* v. *Graham,* 33 Md. 56; *Bugbee* v. *Kendricken,* 130 Mass. 437; *Doyle* v. *White,* 26 Me. 341, 45 Am. Dec. 110; *Robertson* v. *Hunter,* 29 S. C. 9, 6 S. E. 850; *Halstead* v. *Pelletreau,* 101 App. Div. 125, 91 N. Y. Supp. 927; *Mallory* v. *Gillett,* 21 N. Y. 412; *Mechanics'-Traders' Bank* v. *Stettheimer,* 116 App. Div. 198, 101 N. Y. Supp. 513; *Jenkins* v. *Lundgren,* 85 Ill. App. 494.) "Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was, at most, a collateral undertaking." (20 Cyc. 183; *Langdon* v. *Richardson,* 58 Iowa, 610, 12 N. W.

622; *McRoberts* v. *Mathews,* 45 N. Y. Supp. 431; *Hardman* v. *Bradley,* 85 Ill. 162; *Harris* v. *Frank,* 81 Cal. 280, 22 Pac. 857; *Kurtz* v. *Adams,* 12 Ark. 174; *Lomax* v. *McKinney,* 61 Ind. 374; *Cahill* v. *Bigelow,* 18 Pick. (Mass.) 369; *Webb* v. *Hawkins Lumber Co.,* 101 Ala. 630, 14 South. 407.)

The fact that the evidence shows that D. J. Gibson had a contract to get out saw-logs for appellant does not show a sufficient interest and benefit running to appellant to take Clark's promise out of the statute of frauds, especially where the evidence further shows that Gibson was already getting goods from another firm. (See *Clapp* v. *Webb,* 52 Wis. 638, 9 N. W. 796; *Butters Salt & Lumber Co.* v. *Vogel,* 130 Mich. 33, 89 N. W. 560; *Langdon* v. *Richardson,* 58 Iowa, 610, 12 N. W. 622; *Haverly* v. *Mercur,* 78 Pa. 257; *Clay* v. *Walton,* 9 Cal. 329; *Diamond Coal Co.* v. *Cook,* 129 Cal. xviii, 61 Pac. 578; *Tevis* v. *Savage,* 130 Cal. 411, 62 Pac. 611; *Perry* v. *Rodgers,* 62 Neb. 898, 87 N. W. 1063; *Andresen* v. *Upham Mfg. Co.,* 120 Wis. 561, 98 N. W. 518; *Brown* v. *Weber,* 38 N. Y. 187; *Miller* v. *Lynch,* 17 Or. 61, 19 Pac. 845.)

The promise of Clark being undisputed, it was, in effect, the same as a written instrument, and its legal effect was for the court, under the principle laid down in *Wortman* v. *Montana C. Ry. Co.,* 22 Mont. 266, 56 Pac. 316. (See, also, *Helena Nat. Bank* v. *Rocky Mt. Tel. Co.,* 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829; *Wagner* v. *Hallack,* 3 Colo. 177; *Johnson* v. *Bank,* 60 W. Va. 320, 55 S. E. 394, 9 Ann. Cas. 893; *Wray* v. *Cox,* 86 Miss. 638, 38 South. 344; *Garrett-Williams Co.* v. *Hammell,* 131 N. C. 57, 42 S. E. 448; *Fuller & Rice Lumber etc. Co.* v. *Houseman,* 114 Mich. 275, 72 N. W. 187; *Ferris* v. *Walsh,* 5 Har. & J. (Md.) 306; *Hall* v. *Wooden,* 35 Mich. 67; *Miller* v. *Lynch,* 17 Or. 61, 19 Pac. 845; *Bambrick* v. *Bambrick,* 157 Mo. 423, 58 S. W. 8; *Haverly* v. *Mercur,* 78 Pa. 257; *Halstead* v. *Pelletreau,* 101 App. Div. 125, 91 N. Y. Supp. 927.)

In behalf of Respondent, there was a brief by *Messrs. Marshall & Stiff, Mr. Geo. R. Ogden* and *Mr. Frank A. Roberts;* oral agreement by *Mr. Roberts.*

It was for the jury to determine whether or not the facts and circumstances were sufficient to show authority in the president and general manager of the defendant corporation in the first instance, or constituted a ratification of his action afterward. The presumption is in favor of the authority of an officer or agent to act for the corporation in matters within the scope of his office or agency. The necessities of daily business transactions demand this. (Angell & Ames on Corporations, 268–304; Story on Agency, secs. 52–56; *Carrigan* v. *Port C. I. Co.,* 6 Wash. 590, 34 Pac. 148; Thompson on Corporations, sec. 5029.)

The facts of this case bring it squarely within the provisions of section 5660, Revised Codes. The creditor, the McGowan Commercial Company, having parted with its property of value, in consideration of the promise made by the Midland Coal and Lumber Company, through Mr. Clark, its president and general manager, such a promise is deemed an original obligation of the promisor, and need not be in writing. (See *Meldrum* v. *Kenefick,* 15 S. D. 370, 89 N. W. 863.)

Under the evidence, the issue presented was a question of fact for the jury, even under the provisions of the original English statute of frauds; it was for the jury to say, if, under all of the circumstances attending the transaction at the time when the promise was made, as well as from the language employed by the promisor, the promisee gave credit solely to the promisor. (*Johnson* v. *Bank,* 60 W. Va. 320, 55 S. E. 394, 9 Am. & Eng. Ann. Cas. 893; *Larsen* v. *Jensen,* 53 Mich. 427, 19 N. W. 130; *Greenough* v. *Eichholtz* (Pa.), 15 Atl. 712; *Chesebrough* v. *Tirrill,* 61 N. J. L. 628, 41 Atl. 215; *Boykin* v. *Dohlonde,* 37 Ala. 577; *Reynolds* v. *Simpson,* 74 Ga. 454; *Ruggles* v. *Gatton,* 50 Ill. 412; *Doherty* v. *Bell,* 55 Ind. 205; *Pelham* v. *Edwards,* 45 Kan. 547, 26 Pac. 41; *Homans* v. *Lambard,* 21 Me. 308; *Elder* v. *Warfield,* 7 Har. & J. 391; *Stone* v. *Walker,* 13 Gray (Mass.), 613; *Hall* v. *Woodin,* 35 Mich. 67; *Grant* v. *Wolf,* 34 Minn, 32, 24 N. W. 289; *Lombard* v. *Martin,* 39 Miss. 147; *Glenn* v. *Lehnen,* 54 Mo. 45; *Lindsey* v. *Heaton,* 27 Neb. 662, 43 N. W. 420; *Nesbitt* v. *Pioche Consol. Min. etc. Co.,* 22 Nev. 260, 38 Pac. 670; *Walker* v. *Richards,* 41 N. H. 388; *Het-*

*field* v. *Dow*, 27 N. J. L. 440; *McCaffil* v. *Radcliff*, 3 Robt. (N. Y.) 445; *Sheppard* v. *Newton*, 139 N. C. 533, 52 S. E. 143; *Booth* v. *Heist*, 94 Pa. 177; *Hazen* v. *Bearden*, 4 Sneed (Tenn.), 48; *Sinclair* v. *Richardson*, 12 Vt. 33; *West* v. *O'Hara*, 55 Wis. 645, 13 N. W. 894; *Doyle* v. *White*, 26 Me. 341, 45 Am. Dec. 110.)

The words used in the making of the promise do not stand alone, but all of the attending circumstances must be considered by the jury along with the language employed. (*Davis* v. *Patrick*, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826; *Boston* v. *Farr*, 148 Pa. 220, 23 Atl. 901; *Brown* v. *Harrell*, 40 Ark. 429; *Maddox* v. *Pierce*, 74 Ga. 838; *Doyle* v. *White*, 26 Me. 341, 45 Am. Dec. 110; *Cheever* v. *Schall*, 87 Hun, 32, 33 N. Y. Supp. 751; *Grant* v. *Wolf*, 34 Minn. 32, 24 N. W. 289; *Foster* v. *Felcher*, 119 Mich. 353, 78 N. W. 120; *King* v. *Franklin Lumber Co.*, 80 Minn. 274, 83 N. W. 170; *Ford* v. *McLane*, 131 Mich. 371, 91 N. W. 617; *Nesbitt* v. *P. C. Mining & R. Works*, 22 Nev. 260, 38 Pac. 670; *Hazeltine* v. *Wilson*, 55 N. J. L. 250; 26 Atl. 79; *Herendeen Mfg. Co.* v. *Moore*, 66 N. J. L. 74, 48 Atl. 525; *Hall* v. *Alford*, 105 Ky. 664, 49 S. W. 444; *Nixon* v. *Jacobs*, 22 Tex. Civ. App. 97, 53 S. W. 595.)

The fact the goods were charged on the books of the seller to the person to whom they were delivered is not conclusive that they were sold on his credit, but is a circumstance which can be explained, as was done in this case, by showing it was thus charged to prevent confusion of accounts. (*Newton Grain Co.* v. *Pierce*, 106 Mo. App. 200, 80 S. W. 268; *Foster* v. *Persch*, 68 N. Y. 400; *Hazen* v. *Bearden*, 4 Sneed (Tenn.), 48; *Walker* v. *Richards*, 41 N. H. 388; *Swift* v. *Pierce*, 13 Allen, 136; *Barrett* v. *McHugh*, 128 Mass. 165; *Champion* v. *Doty*, 31 Wis. 190; *Ruggles* v. *Gatton*, 50 Ill. 412; *Kesler* v. *Cheadle*, 12 Okl. 489, 72 Pac. 367; *Mackey* v. *Smith*, 21 Or. 598, 28 Pac. 974.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought by the McGowan Commercial Company, a corporation, against the Midland Coal and Lumber

Company, a corporation, to recover the balance due on an account for goods, wares, and merchandise alleged to have been sold by the plaintiff to the defendant, and, at the special instance and request of defendant, delivered to D. J. Gibson. The answer is in effect a general denial of the allegations of the complaint. At the close of plaintiff's case the defendant moved for a nonsuit, and the motion was granted. Thereafter plaintiff moved for a new trial, and this motion was likewise granted. From the order granting a new trial, the defendant appeals.

There is not any dispute or inconsistency in the facts as they appear from the record. Those facts are: In January, 1908, the defendant company was engaged in business at Plains, Montana. It had purchased the logs from certain lands near there, and was anxious to have them removed, and to that end contracted with Gibson to do the work. In order to carry out his contract, Gibson required groceries and other provisions to supply his men engaged in the work, and, being without sufficient ready means, it became necessary for him to obtain credit. He applied for credit to the plaintiff company, which was engaged in the general mercantile business at Plains, and the officers of that company, after investigation, determined that Gibson was not financially responsible; that he would not be able to make any profit from his contract, and they therefore declined to extend credit to him. E. B. Clark, the president and general manager of the defendant company, was informed of this conclusion, and the following took place: An officer of the plaintiff company said to Clark: "Mr. Gibson has applied to us for credit to carry on his logging operations, and we have decided we cannot give him any credit, as we do not think him good," to which Mr. Clark said: "You don't; am I good?" "I [McGowan] said, 'You certainly are,' and he said: 'All right; you let Gibson have what he requires—what he needs— and I will see that it is paid, and you keep our office notified from time to time what the amount is.' " An officer of the plaintiff company then sought out Gibson, and induced him to trade with the plaintiff, and during January, February, March,

and April, 1908, Gibson secured goods from the plaintiff to the amount of $769.05. These goods were charged on the books of the plaintiff to Gibson, and upon the first of every month an itemized bill of the goods delivered to Gibson during the preceding month was sent to him, and the defendant company was notified of the amount of goods thus delivered to Gibson. Upon April 13, the bookkeeper of the defendant company gave to the plaintiff this notice: "You will please not give any more goods to Mr. Gibson under the guarantee of Mr. E. B. Clark." After that date there were no more goods furnished Gibson by the plaintiff on that account. About May 19, E. B. Clark came to the plaintiff's store and paid $300 on Gibson's account, and stated that, as soon as the logs which Gibson had delivered were scaled, "I will see that you get the balance of the money." In August following the plaintiff wrote a letter to the defendant company, at its office in Miles City, in which attention is called to the balance due on the account for goods delivered to Gibson, which letter concludes as follows:

"Kindly let us hear from you at your earliest convenience as we presume Mr. Clark had neglected to inform Mrs. Clark, who handles your business here, that he had guaranteed this account to both the writer and our Mr. McGowan. •

"Yours very truly,

"McGowan Commercial Company,

"Per C. H. Rittenour, Secy."

The testimony further tends to show that the plaintiff did not rely upon, or look to, Gibson for payment for the goods thus delivered, but extended credit solely upon the assurance given by the defendant, through Clark, and looked to the defendant alone for payment. It further appears that after Gibson had completed his logging contract, the plaintiff company did extend credit to him on his own responsibility, to the extent of about $60. The defendant company having refused to pay the balance of the first account, this action was brought. The other facts will appear later.

Counsel for appellant contends that the court erred in granting a new trial (1) because the evidence is insufficient to show

any authority in Clark to make a contract, on behalf of the defendant company, to answer for the debt of Gibson; (2) that the evidence shows that, if any promise was made by Clark on behalf of the defendant, it was to answer for the debt, default, or miscarriage of Gibson, and, not being in writing, it was void; and (3) that there is a fatal variance between the allegations of the complaint and the proof, in this: That the complaint charges upon an original obligation of the defendant company, whereas the evidence shows a collateral undertaking, if any.

1. As we view this evidence, it is wholly immaterial on this appeal whether Clark had authority to make a contract to pay the debt of Gibson, since the contract, if of that character, is void, not because of the lack of authority in Clark to make it, but because it was not in writing, and falls within the inhibition of section 5017, Revised Codes. If, however, the agreement made between Clark and the officers of the plaintiff company amounted to an original promise, then the question might properly arise: Whose promise was it—the defendant company's or Clark's individual promise? If it was an original promise, and Clark intended to bind the defendant company, and not himself individually, we think there is a presumption that he had the authority to do so, arising from the fact of his employment as president and general manager of the defendant company, and the apparent interest which the company had in seeing Gibson so situated that he could carry out his contract. (Story on Agency, sec. 56.) But whether Clark intended to bind himself or the defendant company was a question of fact for the jury to determine from all that was said and done and from all other surrounding facts and circumstances. (*Gerber* v. *Stuart,* 1 Mont. 172; 1 Am. & Eng. Ency. of Law, 2d ed., 1121; 31 Cyc. 1553; 2 Ency. of L. & P. 920–923.)

2. Assuming that Clark intended to bind the defendant company by his declaration to the officers of the plaintiff, the appellant contends that the question, Does Clark's statement amount to an original promise to pay for the goods, or merely to a promise to answer for Gibson's debt? is one of law, and

does not involve any element of fact for a jury's consideration. The general rule applicable in such cases is: "Where the question whether the promise was original or collateral depends alone upon its terms, and the language used is established by undisputed testimony, such question is one of law for the court. But the nature of the promise is usually to be determined by the jury as a question of fact, for it may appear that a promise, original in form, was in fact made and intended as collateral, * * * or a promise to be 'responsible' may be found to be collateral, or promises deemed *prima facie* collateral may be adjudged original." (29 Am. & Eng. Ency. of Law, 2d ed., 906.)

If this record presented only the language used by Clark to the officers of the plaintiff company, stripped of any attending facts or circumstances which could possibly throw light upon the intention of the parties at the time, then the only question presented would be one of law. But it is a well-recognized rule that, whenever the language of the promisor was used in connection with other facts and circumstances which can fairly be said to illustrate the language employed, or to throw light upon the intention of the parties at the time the promise was made, then it becomes a question of fact for a jury's determination, under proper instructions, whether the promise was original, or collateral to the promise of a third person. If the promise was original, then the statute of frauds is not applicable; but, if collateral, then it is void unless in writing. In Smith on the Law of Frauds, section 319, it is said: "The subject matter of the promise, the relationship of the parties to the transaction, the language used, the surrounding facts and circumstances, and the intention of the parties as interpreted by their acts in recognition of the promise, its fulfillment, etc., are important elements in determining whether the promise is collateral and subject to the statute, or original and not subject to it."

To attempt to designate all the facts and circumstances which might be the subject of legitimate inquiry in determining the

character of a promise thus made would be a hopeless task. Reference to some of them may be had. It is always proper to inquire whether the promisor had any immediate pecuniary interest in the transaction between the promisee and the person for whose benefit the promise was made. (*Davis* v. *Patrick*, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826.) This court has said: ''Wherever the main purpose and object of the promise is not to answer for another, but to subserve some purpose of his [the promisor's] own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.'' (*Carothers* v. *Connolly*, 1 Mont. 433.) When the statute of frauds is invoked, the question of primary importance is: To whom was the credit given? (20 Cyc. 180.) It is the province of the jury to determine to whom the credit was given, and their duty, in so doing, to consider the extent of the undertaking, the expression used, and the circumstances of the case. (*Boykin* v. *Dohlonde*, 37 Ala. 577.) Whenever from the language employed by the promisor reasonable men might draw different conclusions or inferences, then the intention of the parties at the time the promise was made becomes a subject of legitimate inquiry. ''It is often difficult to determine from the mere words in which a promise is made whether an undertaking is collateral to the engagement or liability of a third person, or an entirely independent and original undertaking. In such cases courts must rely on the circumstances of each particular case and its general features, in order to ascertain the intent of the parties and how they viewed it, when it is doubtful whether it was a contract of suretyship or guaranty or an original undertaking.'' (20 Cyc. 164.) As said by the supreme court of the United States in *Davis* v. *Patrick*, above: ''Counsel for Davis place stress on the form of expression attributed by Patrick to Davis, to-wit: 'I will be personally responsible; I will see you paid'—and contends that the import of such language is that of a collateral promise. There is force in this contention, as it

implies that someone else was also bound; but the real char-
acter of a promise does not depend altogether upon the form
of expression, but largely on the situation of the parties, and
the question always is what the parties mutually understood
by the language, whether they understood it to be a collateral
or a direct promise.'' ''It is for the jury to find what the real
substance and spirit of the undertaking between the parties
was.'' (Wood on Statute of Frauds, sec. 98.)

Some of the facts which the evidence in this case tends to
prove, and from which a jury might infer a primary liability
on the part of the defendant company, are: (a) Gibson needed
credit, which he sought from the plaintiff company, in order to
carry out his contract with the defendant company, and credit
was refused him. With knowledge of this fact, the defendant
made the promise. For Gibson to get the goods would appar-
ently benefit the defendant company, in that Gibson would
thereby be enabled to carry out his contract, and the defendant
would get the logs delivered at once, a matter in which it ap-
pears to have been concerned. (b) The credit was given to
the defendant company exclusively. (c) The defendant paid
$300 on Gibson's account. And (d) defendant asked to be in-
formed of the amount of goods delivered to Gibson. Some of
the facts from which a contrary inference might be drawn are:
(a) The goods were charged on the plaintiff's books to Gibson,
and an itemized statement sent to Gibson every month; (b) the
plaintiff wrote to defendant in August that Clark had guar-
anteed Gibson's account; and (c) after Gibson's contract with
defendant company expired, plaintiff extended credit to Gibson
on his own responsibility. But all of these facts and circum-
stances are subject to explanation, and some of them at least
are explained. For instance, in explanation of the charge on
the books to Gibson, it is said that the defendant company was
purchasing goods from plaintiff on credit during the same time
that goods were delivered to Gibson, and that the goods so de-
livered to Gibson were charged to him in order to prevent con-
fusing that account with the account of the defendant company

for goods which it purchased for its own immediate use, and in order that plaintiff might comply with Clark's demand that the defendant company be kept informed of the amount of goods delivered to Gibson. The rule applicable in such a case is well stated, as follows: "Evidence that the goods sold were charged to the person to whom they were delivered strongly tends to show that the vendor gave credit to him, and relied upon him for payment, and therefore that the promise of another to be answerable for the debt was at most a collateral undertaking. However, this evidence is not conclusive, but is open to explanation, and the weight of it is for the jury." (20 Cyc. 183.) Treating of this particular phase of the case under similar circumstances, the supreme court of Oregon, in *Mackey* v. *Smith,* 21 Or. 598, 28 Pac. 974, said: "It is enough to say that it was to prevent confounding the accounts, as already explained, that the charges were thus made on the books. With this explanatory evidence, the referee, who stands in the place of the jury, was satisfied; and, as it was proper evidence to be considered by him, it is not for us to weigh it or revise his findings."

It is urged by appellant that the evidence shows that at the time Clark is alleged to have made this promise, Gibson was getting goods from another firm in Plains; and this is true, but it does not appear to what extent Gibson was dealing with Peterson & Kruger, or whether he was paying cash or obtaining credit.

It is likewise urged that the evidence is not sufficient to show that the defendant company had such an immediate pecuniary interest in the transaction between Gibson and the plaintiff as would furnish a consideration for defendant's promise. But we think this is a question of fact for the jury. The evidence tends to show that the defendant company had a pecuniary interest in having the logs removed at once; that it had endeavored to secure the services of at least one other person to do the work, but, the price not being satisfactory, it finally contracted with Gibson. Since it was necessary for Gibson to obtain the goods in order to carry out his contract at all, and his.

.failure might result in financial loss to the defendant company, it might be a reasonable inference from these facts that the :leading object which defendant had in view in giving its assur-.ance to plaintiff under the circumstances was to subserve or promote its own interest, even though such assurance had the ·effect of paying what would otherwise have been the debt of ·Gibson and particularly is this so in view of the further fact that Gibson's performance of the contract would render defend-.ant his debtor, and it could protect itself in its settlement with .him if the proceeds of the contract would defray the expense.

Counsel for appellant further contends in his brief that: ·''The evidence must show that the credit was extended exclu-·sively to the promisor, and that the third party was absolutely ·discharged from liability, in order to take the promise out of ·the statute of frauds.'' With the first part of this statement we fully agree. The rule is stated as follows: ''But in all such ·cases it is requisite that credit should be given exclusively to :the promisor; if any credit be given to him for whose benefit ·the promise is made, the promisor is not liable unless his promise ·is in writing; and this is so although the collateral undertaking may have been the principal inducement to the delivery of the .goods or the performance of the services.'' (20 Cyc. 181.) But the authorities cited by counsel do not sustain the proposi-·tion that, in addition to showing that credit was extended to ·the promisor exclusively, it must also appear that the third ·party was released from liability. At first blush some of the ·cases would seem to support that contention, but a careful analy-·sis will disclose that they do not go further than to hold to the .general rule just quoted above. The effect of an original promise is to make the promisor the debtor in the first instance, ·even though the goods sold be for the benefit of another. It would be absurd to say in this case that credit was extended .solely to the defendant company, and Gibson was released from .liability; for if the defendant company was an original prom-isor—that is, if it was the only debtor in the first instance—then there never was any liability to be released. (Browne on

the Statute of Frauds, sec. 162.)   It is only when one agrees
to pay the *pre-existing* debt of another that the principle of
law invoked by appellant is applicable (20 Cyc. 186) ; and that
principle has no application to the facts of this case, because
defendant's promise, if made at all, was to pay for goods there-
after to be delivered to Gibson, and not to pay a pre-existing
debt of Gibson's.

The language employed by plaintiff in its letter to the de-
fendant, in August, 1908, would seem to indicate that plaintiff
then considered the defendant a guarantor of Gibson's debt;
but the courts are not inclined to decide these cases upon the
mere form of expression  employed by either the  promisor or
promisee, unless the words stand alone, unaided by any facts
or circumstances, and the reason for this is obvious.   The
average layman does not weigh his words in the light of techni-
cal legal definitions, and could hardly be expected to distin-
guish between an original and a collateral promise.

Whatever construction may be put upon subdivision 2 of sec-
tion 5660, Revised Codes, we think the provision is not applicable
to the facts so far as disclosed in this case.   The case of *Mel-
drum* v. *Kenefick,* 15 S. D. 370, 89 N. W. 863, presents facts
to which this subdivision is clearly applicable.

Upon the several propositions which we have discussed under
this assignment, the authorities are not altogether harmonious.
But we think our views have the support of the decided weight
of authority, and appear to us most consonant with reason.
In view of these rules the trial court should have denied the mo-
tion for a nonsuit; but, not having done so, on consideration
of the motion for a new trial it very properly reached the con-
clusion that the cause should have been submitted to the jury.
What we have said under this assignment  disposes of the third
one also.

In our consideration of this appeal we have treated the evi-
dence from the standpoint of the trial court at the time the
motion for nonsuit was interposed; that is to say, we accept
the evidence as true for the purpose of this appeal, and view

it in the light most favorable to plaintiff.  This is the rule in this state.

We do not find any error in the trial court's ruling.  The order granting a new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

