MUTCH & YOUNG, APPELLANT, *v.* POWERS, RESPONDENT.

(No. 4,771.)

(Submitted April 20, 1922.  Decided May 24, 1922.)

[207 Pac. 621.]

*Action on Account—To Whom Credit Extended—Jury Ques-
tion—Account Stated.*

Action on Account—To Whom Credit Extended—Jury Question.
    1.  In an action on an open account for goods delivered and money
    loaned, where the evidence of plaintiff showed that the goods were
    sold and money loaned to defendant, that she ordered the goods,
    negotiated as to their price, and returned a portion of them for
    which she received credit, the question whether credit was ex-
    tended to her or to her husband was a question for the jury, though
    the original slips showed that the goods and money were charged
    to the husband.
Same—Exhibits—Striking from Record—Nonsuit—Error.
    2.  *Held*, under the above circumstances, that the trial court erred
    in striking the sales slips introduced in evidence as exhibits and in
    granting a nonsuit.

Account Stated—What may Create.
    3.   The result of the action of defendant in stating, upon presentation of a bill for goods, that she would attend to it in a few days, and in failing to deny liability, was an account stated.

Same—Evidence will Support Action on Open Account.
    4.   Evidence showing an account stated is sufficient to support a cause of action on an open account.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

ACTION by the Mutch & Young Company, a corporation, against Hattie Powers. From a judgment of nonsuit and an order denying a motion for a new trial, plaintiff appeals. Reversed and remanded.

*Messrs. Frank & Gaines,* for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

*Mr. H. A. Tyvand,* for Respondent, submitted a brief and argued the cause orally.

MR. COMMISSIONER COMER prepared the opinion for the court.

Plaintiff (appellant herein) brought this action against defendant (respondent herein) to recover a balance due for certain goods, wares and merchandise sold to and money loaned the defendant, between April 1 and June 16, 1917. The answer denies the allegations of the complaint.

The evidence discloses that during this period of time defendant and her husband, C. E. Powers, had a lease on what was known as the Dorothy Dining Room in the Dorothy Block in the city of Butte; that defendant had a conversation with witness Garrison, who worked for plaintiff as solicitor, in which she said she was taking over the Dorothy Dining Room; that she thought she could get some more boarders and make enough money to keep her husband out of the mines, as

---

3.   The law of accounts stated, see note in 136 **Am. St. Rep.** 37.

he was not very healthy. The witness reported this conversation to the plaintiff. After that conversation, defendant, Mrs. Powers, moved into the Dorothy Block; she ordered groceries from the witness; he was at that time taking orders for the plaintiff; she figured with him on the price and agreed on the price of what she ordered; he saw her around the dining-room; after taking the orders he would turn them in to the store. Defendant also did the cooking at the Dorothy Dining Room during this period of time. The president of the plaintiff company testified that the solicitor reported Mrs. Powers was going into the Dorothy Block. He was informed she had moved into the Dorothy Block when an order of groceries was delivered there. He made a change in the ledger account. They had been selling goods to Mr. Powers prior to that time. The groceries mentioned in this case were sold to the defendant. Some checks from C. E. Powers were applied on the account, and some of the account was paid by checks signed over through the Dorothy Café. Plaintiff's bookkeeper testified he kept the books and passed on the credits; that he passed on the orders as to whether they should be delivered or not; he would total the slips and pass the total on the ledger sheets; that he was familiar with the account which was entered up for groceries and supplies that were furnished to the Dorothy Café or Dorothy Dining Room. From the original sales slips he prepared a memorandum showing the items that were furnished to the Dorothy Dining Room. This was marked as Plaintiff's Exhibit 3 for identification. The witness stated that it is an itemized account of groceries delivered to the Dorothy Block from April 30 to June 16, 1917, and was prepared from the original charge slips, which are available for use if desired.

It was thereupon stipulated in open court that the original [1] charge slips would show that the name of C. E. Powers appears under the caption "sold to"; Plaintiff's Exhibit 3 was offered in evidence for the purpose of showing the items

of merchandise delivered to the Dorothy Block between the period mentioned, April 30, 1917, to June 16, 1917, including the item of $200 cash. This was objected to "as incompetent, irrelevant and immaterial, it appearing therefrom that the credit was not given to the defendant in this case, but to another person."

The court then said: "It isn't offered for that purpose at this time. He said he simply offered it for the purpose of showing the merchandise that was delivered to the Dorothy Block." The defendant then objected to it as incompetent, irrelevant and immaterial, which objection was overruled; the court stating that, if it was not connected up, he would sustain a motion to strike it out.

The proposed exhibit is an itemized statement of the goods, wares and merchandise alleged to have been sold and delivered by the plaintiff to the defendant, including the money loaned, during the times mentioned in the complaint, showing a total of $1,058.85, credit by merchandise returned $54.90, credit by cash $554.30 leaving a balance due of $449.65. This witness further testified that the goods sold by plaintiff which were delivered to the Dorothy Block Dining Room were sold to Mrs. C. E. Powers, the defendant. Witness Amos testified he had charge of the grocery department of Mutch & Young Company in 1916 and 1917; that the defendant personally, over the telephone, ordered supplies from him; that she would tell him what she wanted and ask prices on it; he would figure with her on the items that were ordered; he made a record of the order on a charge slip which was turned over to the order department for delivery; the slip would then go on file through the office for permanent record and be entered on the ledger; he agreed with Mrs. Powers as to the prices to be paid for these goods; that covers the goods involved in this action; he talked with Mrs. Powers at different times concerning her operation of the dining-room; she ceased operating the dining-room in June; she told him that she was giving up the dining-room; that *she had some merchandise that was in larger quan-*

*tities than she cared* to use; she wanted to know if it would be all right *if she returned this merchandise,* and we would pass her credit for the merchandise returned; she returned the same to the plaintiff, receiving a credit therefor, as shown on the exhibit, of $54.90; she told him that the enterprise had been successful; that she had made some money and that she would not see fit to put it out again to men who were not working.

This witness had another talk subsequently relative to the account with the defendant. He went to see her and presented a bill and asked for the money. She told him "she would be down and attend to it in a few days. But she never come in and attended to it."

When the plaintiff closed his case, defendant asked that Exhibit 3 and matters in connection with that exhibit be stricken "because it wasn't connected up." The court granted the motion. The defendant then moved the court for an order of nonsuit upon the ground the plaintiff failed to make out a case against the defendant, which the court granted. A motion for new trial was made and refused. From the judgment of nonsuit and order refusing a new trial, plaintiff appeals.

The first error assigned is the granting of defendant's motion to strike Exhibit 3. The objection raised to the exhibit, as we gather it from the record and briefs of counsel and the theory of the defense at and during the trial, was that it appeared from the original sales slips and the ledger accounts that the credit was not extended to defendant but to another person. In defendant's brief, he says: "The ledger accounts offered in evidence in this case certainly show no other name than that of C. E. Powers, and it certainly does not show the name of Hattie Powers. That of itself is clear evidence of to whom the merchandise was sold, to whom credit was given, and against whom the charges were made."

The original sales slips were available and subject to the examination of the defendant. The exhibit was clearly second-

ary evidence, but no objection was made to it upon that ground, the parties treating it as a correct copy of the entries upon the ledger account and the original sales slips. Defendant's position is that since neither the original sales slips nor the ledger accounts show the goods or money were charged to defendant, but to C. E. Powers, this is conclusive that credit was not extended defendant. This is the question raised on this assignment.

The testimony of plaintiff's witnesses is that the goods were sold and the money loaned to defendant; that she ordered the goods, negotiated as to their price, returned a portion of the goods to the plaintiff to be credited, not to her husband, but to herself. Under these circumstances, it was a question for the jury whether credit was given to defendant or her husband. (20 Cyc. 183; *Fergus County Hardware Co.* v. *Crowley,* 57 Mont. 340, 188 Pac. 374; *McGowan Com. Co.* v. *Midland C. & L. Co.,* 41 Mont. 211, 108 Pac. 655.)

In *Fergus County Hardware Co.* v. *Crowley, supra,* one of the questions before the court was whether the fact that the goods were charged to one Pentecost was conclusive that the sale was made to him, and the court said in passing on that question: "It was peculiarly the province of the jury to pass upon the credibility of plaintiff's witnesses, and the general verdict is in effect a finding that their version of the transaction is the correct one. With these facts found, there cannot be any question that Crowley's obligation was an original one not affected by the statute of frauds. While it will be conceded that the facts that the goods were charged to Pentecost, that bills for them were rendered to him and partial payment received from him, tend strongly to indicate that the sale was made to him, still neither any one of the facts is, nor all of them are, conclusive against the plaintiff. They may be explained, and if the jury was satisfied, as it apparently was, that the sale was made altogether upon the credit of Crowley without any intention of resorting to Pentecost for payment, the recovery is warranted. (25 R. C. L. 491, 492.) This

entire subject has been covered so fully by this court in *Mc-Gowan Com. Co.* v. *Midland C. & L. Co.*, 41 Mont. 211, 108 Pac. 655, *Fortman* v. *Leggerini*, 51 Mont. 238, 152 Pac. 33, and *Breidenbach Bros.* v. *Upper Valley Orchards Co., ante*, p. 247, 187 Pac. 1008, that further citation of authorities is unnecessary.''

We are of the opinion the court should have denied the motion to strike out the exhibit.

Did the court err in granting the motion for nonsuit? [2] The evidence shows defendant operated the Dorothy Dining Room; she ordered the goods shown on Exhibit 3, which is an account prepared from the original sales slips, showing items delivered to the Dorothy Dining Room. Defendant stated to plaintiff she wished to return some of the groceries and receive credit therefor, as she was ''giving up the dining-room''; that she did return some groceries and received credit upon the account. She stated the enterprise had been successful; that she had made some money and did not see fit to put it out again to men who were not working.

Subsequently—that is, after she returned these groceries—[3] she had a talk with one of plaintiff's witnesses relative to the account. He went to see her, presented a bill, and asked for the money. The evidence does not show she denied her liability, but she did say she ''would be down and attend to it in a few days,'' which she did not do.

''It is quite generally held that where parties have been engaged in a course of dealings and there is an antecedent indebtedness in favor of one as against the other, and an account or bill purporting to be a statement of the account is rendered by the creditor to the debtor, who retains the same for an unreasonable length of time without objection, this is evidence of his assent to the correctness of the account, and, accordingly, is an account stated. (See 1 Corpus Juris, p. 691, sec. 276, p. 695, sec. 288; see, also, cases in Decennial and Century Digest 'Accounts Stated,' sec. 6.)'' (*O'Hanlon* v.

*Jess,* 58 Mont. 415, 14 A. L. R. 237, 193 Pac. 65; see, also, *Baldwin* v. *Silver,* 58 Mont. 495, 193 Pac. 750.)

Evidence showing an account stated is sufficient to support [4] a cause of action on an open account. (*Roy* v. *King's Estate,* 55 Mont. 567, 179 Pac. 821; 1 Cyc. 485.)

We are of the opinion the plaintiff made a showing sufficient to go to the jury; we therefore recommend that the judgment and order appealed from be reversed and the cause remanded for further proceedings.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause is remanded for further proceedings.

*Reversed and remanded.*