ROBINSON & SON CONTRACTING COMPANY *v.* TWIN CITY BANK.

Opinion delivered April 15, 1912.

1. APPEAL AND ERROR—HARMLESS ERROR.—An erroneous statement of the law, in the court's instructions, which was based upon the existence of a certain state of facts was harmless where the jury found that no such state of facts existed. (Page 225.)

2. STATUTE OF FRAUDS—PROMISE TO PAY ANOTHER'S DEBT.—A verbal promise by a principal contractor that he would reimburse a certain bank for money advanced to a subcontractor upon time checks issued by the subcontractor in completing the contract work is not within the statute of frauds. (Page 225.)

3. EVIDENCE—RELEVANCY.—Where a principal contractor obligated himself to reimburse a bank for moneys advanced to a subcontractor, testimony as to whether the principal contractor was indebted to the subcontractor or *vice versa* was irrelevant. (Page 226.)

4. SAME—BOOKS OF ACCOUNT.—Where a bank sued a principal contractor for moneys advanced to a subcontractor upon his time checks, which the principal contractor agreed to repay, the books of the bank were

not essential to the maintenance of the action, and it was not error to refuse to require their production. (Page 226.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk*, Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant had a contract with Pulaski County to do certain dredge work for the purpose of draining what is known as "Dark Hollow." Appellant sublet a portion of the work to C. S. Whitney. Whitney arranged with the appellee to cash time checks issued by him as the work progressed. The appellee alleged that the appellant agreed with it "that any sums that were due either directly to the contracting company or to Whitney should be applied to the payment of moneys advanced by the appellee in cashing the time checks; that the appellee advanced from time to time various sums during the months of May, June and part of July, 1909, aggregating $1,650.55; that appellant paid $1,300 of said amount, leaving a balance of $350.55 due, for which it asked judgment.

The appellant denied that it agreed, either directly or indirectly, to pay any of the advances made by the appellee on time checks issued by Whitney. It denied that it was indebted to Whitney in any amount whatever, and stated that it had "advanced large sums in the construction of the drain in excess of the work actually performed by Whitney."

The witness Whitney testified that he was a dredge contractor, and had a sub-contract from appellant to do certain drainage work; that appellant (acting through S. R. H. Robinson) and he arranged with appellee to pay all time checks issued by Whitney. The arrangement was that appellee should advance the money on the time checks, and appellant was to pay appellee for the money so advanced. Appellant paid all money advanced by appellee in cash on his (Whitney's) time checks except $350. Appellant charged to witness's account large amounts paid by it to appellee on the time checks.

The cashier of appellee, at the time when the alleged arrangement is said to have been made, testified that Whitney and Robinson (appellant) came to the bank together, and that Whitney said that he was a sub-contractor under Robinson,

and that the money for his work went to Robinson, and represented that any time checks paid by appellee would be paid to it by Robinson (appellant). Payment of the time checks continued until July 13, 1909, at which time witness received a letter from Robinson, dated July 12, addressed to appellee, as follows:

"Gentlemen: Our Mr. Hutchins has been compelled to go West, and consequently delay in getting down there to take up the matter of time checks, issued by Mr. Whitney. I enclose our check for $800, on account. In doing so, it is understood that we only pay such time checks as are satisfactory to us; that is, if any checks do not meet with our approval, we reserve the right to refuse them."

The witness further testified that Robinson guaranteed the payment of the checks. He stated that appellant would pay them if Whitney did not. The payment of the checks was guaranteed by Robinson (acting for appellant). "The S. R. H. Robinson Contracting Company was to pay them."

Witness testified that, after the checks were all paid but the sum in controversy, Robinson came in the bank with Whitney and guaranteed the payment of this balance months and months after the checks were due. They were time checks issued by Whitney. Robinson did not agree in writing to pay the amount advanced on these time checks. Robinson paid $500 on time checks after the letter of July 12 was received by the appellee. After the letter of July 12 was received appellee paid no more time checks.

The payment of the amount advanced by the appellee, according to this witness, was made on the representation of Robinson, acting for appellant, to the effect that he would pay the money advanced by the appellee.

S. R. H. Robinson, on behalf of appellant, testified that he, at the instance of Whitney, went to the Twin City Bank and explained to the cashier how Whitney obtained his estimate. He told the cashier that they got the estimate about the tenth, and that the money usually came about the fifteenth, and that they would pay Whitney, and Whitney would pay the bank.

On cross examination, he stated the reason he did not pay the money to Whitney, instead of the bank, was because he felt a moral obligation to see that the bank was paid. Witness

said: "Although I did not assume the payment of these time checks, I felt as if it was a moral obligation to do so. I talked to Moore (cashier) about the time checks, and at that time he had paid $1,300."

The witness further testified as follows: "The agreement was that Mr. Moore (cashier) asked me to pay these checks (time checks), and he said he looked to me for the payment of them, and I told him I didn't feel responsible for the payment of them, and he said, 'You guaranteed the payment of the checks,' and I said 'I didn't,' and I went over the talk we had when Mr. Whitney was in there, and he said, 'That was not the understanding I got,' and after a little I said, 'I will pay those checks, but under no consideration will you cash any more of those checks and expect me to pay them;' and I went to St. Louis and sent a check for $800. All the agreement I made was at the time Mr. Watkins was there, which was between the first and the fifth of July."

Witness stated that at the time he asked the bank not to look to appellant for the payment of the checks he thought the amount was thirteen hundred and thirty dollars and some cents. He said he made this promise to pay the appellee because he recognized that there was a moral obligation to assume the debt, and stated that he would have recognized the same obligation if the debt had been $1,650.55.

Appellant offered to prove that Whitney had been adjudicated a bankrupt, and that appellant proved its claim against Whitney's estate. The court refused to permit such proof, and appellant excepted.

The appellant asked the cashier of the bank to whom the account upon the books of the bank relating to the checks was charged. Witness answered that he did not remember. Appellant asked that the witness be required to produce the books, which request the court refused, and the appellant excepted to the ruling. The court gave the jury the following instruction:

"Gentlemen of the jury: The court gives you a peremptory instruction in this case to find for the plaintiff. There is a dispute as to the date the contract was abrogated. Mr. Robinson claims that it was between the 1st and 5th of July, and the bank officials say that it was on July 12. The

question of fact for you to determine, therefore, is whether it was abrogated between the 1st and the 5th or on the 12th of July. If you find from the evidence that Robinson & Sons, through S. R. H. Robinson, president, abrogated the contract with the bank between July 1 and 5, and at that time stated that they would not be responsible for future time checks issued by Whitney, then the plaintiff is entitled to a verdict of $73.09, with interest at six per cent. If you find from the evidence that the contract was abrogated on July 12, then the plaintiff would be entitled to a verdict for $350.55, with interest at six per cent. If you find that the contract was abrogated between the 1st and the 5th of July, your verdict will be for the plaintiff in the sum of $73.09, and if you find that it was abrogated on the 12th of July, your verdict will be for $350.55. That is the question that you have to pass upon, and the burden is upon the defendant to establish that the contract was annulled between the 1st and the 5th of July."

At this juncture the jury asked whether the vouchers or time checks were cashed prior to July 5. The court then stated as follows:

"The court has figured that up, and if you find that it was abrogated between the first and the fifth of July the amount is $73.09, and if it was on the twelfth of July the amount due is $350.55."

The appellant objected to the instruction of the court.

The jury returned a verdict in favor of the appellee for $350.00, with interest from July 12, 1909. The appellant moved for a new trial, assigning as errors the adverse rulings to which it had saved exceptions. The motion was overruled, and it has duly prosecuted this appeal.

*J. A. Comer*, for appellant.

1. If appellant was not an original obligor, it was not liable at all, because the promise, if any, was not in writing, and falls within the statute of frauds. Kirby's Dig., § 3654; 12 Ark. 174; 88 Ark. 572, and cases cited. The testimony offered to the effect that Whitney had been adjudicated a bankrupt, and that appellant proved its claim against his estate, was for the purpose of showing that appellant was not indebted to Whit-

ney, and hence that there was no reason why appellant should agree to pay his debts or become liable for same. It should have been admitted.

2. As to whether appellant was an original obligor, or whether it was to answer for Whitney, was a question for the jury to determine from the evidence, and the court erred in charging the jury that it was an original obligor. One of the court's instructions charges the jury in effect that there was a contract between appellant and appellee whereby appellant was to pay the Whitney time checks, and fixes the amount they should find, if the contract was abrogated between July 1 and 5. The question as to there being a contract and the amount of the finding should have been left to the jury. If Robinson notified appellee on July 5 that appellant would not reimburse it for time checks issued by Whitney, appellant was not liable for payments of time checks thereafter, and the jury should have been so charged.

*Mehaffy, Reid & Mehaffy,* for appellee.

1. The only question of fact left for the jury to determine, under the evidence, was whether the contract was abrogated between the 1st and 5th of July, or on the 12th of July, and the court properly so instructed the jury. Under the instructions given the jury's finding is in effect that appellant did not give notice to suspend payments until July 12.

As to the amounts stated by the court in its instructions, that was a mere matter of calculation, the accuracy of which should have been challenged at the time, if erroneous.

2. The statute of frauds has no application under the state of facts developed in this case. 91 Ark. 381; 96 Ark. 46; 76 Ark. 1; *Id.* 292.

WOOD, J., (after stating the facts). 1. The uncontradicted evidence shows that appellant agreed to pay appellee the advances that it had made to Whitney up to the 5th of July. The president of the appellant testified that he was under the impression that the amount at that time was $1,330; but he stated that he would have recognized "the same obligation if the debt had been $1,650.55."

Taking his whole testimony together, it shows that while he thought the amount was $1,330, yet, if in fact it amounted

to $1,650.55, his agreement to pay covered it. The undisputed evidence shows, and the appellant concedes, that the amount paid by the appellee on the time checks of Whitney up to July 5 exceeded $1,300. The court was correct, therefore, in telling the jury that they should find for the plaintiff.

The only question about which there was a conflict in the evidence was as to whether or not the promise of appellant embraced the amounts that were paid by the appellee between July 5 and July 12, when appellant wrote to appellee the letter introduced in evidence. The court, in its instruction, properly submitted this question to the jury, and the evidence was sufficient to sustain the finding of the jury on that issue.

The appellant could not have been prejudiced by the statement that "if you find that it was abrogated between the 1st and the 5th of July the amount is $73.09," even though the amount stated was inaccurate, because the verdict shows that the jury did not find that appellant gave notice that it would not pay advances made by appellee after July 5. On the contrary, the jury found that the promise to pay included all advances made to July 12.

2. On account of what took place between Whitney, the appellee, and appellant's president (Robinson) in the bank before appellee had made any advances to Whitney, appellant Robinson recognized that he was under moral obligation to see that the appellee was paid. He said he did not pay the money to Whitney, instead of the bank, because of such obligation.

Appellant had a contract to do certain work, and sublet a portion of that work to Whitney. Appellant was the beneficiary of the work done by Whitney, received pay for it, and in turn was liable to Whitney for the work done by him. Whitney could not do the work unless certain advances were made to him, which appellee agreed to make, and appellant knew that these advances were made to Whitney with the expectation that appellant would pay to appellee such advances out of the money that it was obligated to pay Whitney for the work. What took place in the bank between these parties was tantamount to a representation upon the part of appellant that it would have certain money in its hands belonging to Whitney with which it would reimburse appellee any amounts that it advanced to Whitney on his time checks in doing the dredging

work. The statute of frauds has no application under such circumstances. *United Walnut Co.* v. *Courtney,* 96 Ark. 46.

3. The court did not err in excluding what appellant offered to prove by witness W. S. Allen. Whether or not appellant was indebted to Whitney or Whitney to appellant was wholly immaterial to the issue in this case. Such testimony would have introduced collateral issues, and was incompetent.

4. The books of the bank were not essential to the maintenance of the appellee's cause of action, and the court therefore did not err in refusing to require the appellee to produce its books. No motion was made to have the complaint show the account of appellee as disclosed by its books. Therefore, the court properly exercised its discretion in refusing the request of appellant to have appellee's books produced. *Cauthron Lumber Co.* v. *Hall,* 76 Ark. 1.

We find no error in the proceedings. The judgment is therefore affirmed.